# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,                    :
                                      :     I.D. Nos. 1709017188 and
v.                                    :     1711012278
                                      :     Kent County
GRACE I. YU a/k/a I-YIN LIU           :
a/k/a GRACE LIU,                      :
                                      :
          Defendant.                  :


Submitted: October 22, 2018
Decided: November 7, 2018

## ORDER

Upon Defendant's Motion in Limine
To Exclude Testimony of Dr. Giordano.
*Granted in Part; Denied in Part.*


Laura N. Najemy, Esquire of the Department of Justice, Wilmington, Delaware; attorney for the State.

Eugene J. Maurer, Jr., Esquire and Elise K. Wolpert, Esquire of Eugene J. Maurer, Jr., P.A., Wilmington, Delaware; attorneys for the Defendant.


WITHAM, R.J.

Upon consideration of the Motion in Limine filed by the Defendant, Dr. Grace I. Yu,[1] the opposition of State, oral argument, and the record of the case, it appears that:

1. The Defendant is a licensed dentist in Delaware and is licensed to administer Nitrous Oxide (N2O) to patients.

2. The Defendant is also enrolled as a dentist with the Delaware Medical Assistance Program ("DMAP"). According to DMAP's policy manual:

> [o]nly providers who hold a State permit (restricted permit I, restricted permit II, or unrestricted) are permitted to <u>administer and bill</u> for anesthesia services allowed under their specific permit.[2]

3. On September 29, 2017, the Defendant, facing charges of Health Care Fraud and Child Endangerment, surrendered to law enforcement. The charges alleged unlicensed dental assistants to administer N2O to patients.

4. The State disclosed that it intended to call Dr. Lawrence Giordano, a board certified dentist in the field of oral and maxillofacial surgery, as an expert witness for the State.

5. In addition to the proposed testimony, the State provided a report prepared by Giordano entitled "Summary of Evaluation of the Administration of Nitrous Oxide Sedation by Dr. Liu"[3] that appears to be the basis of his testimony. The report offered

---

[1] The Defendant is known as Dr. Grace I. Yu, I-Yu Liu, and/or Grace Liu.

[2] DMAP Provider Policy Manual at § 4.2.1.2. *See also* 24 *Del. Admin. C.* § 1100-7.2.1. (Emphasis added.)

[3] D. Mot. Ex. B.

2

the following conclusions:

[A]. [Defendant] allows many (most?) of her assistants to begin the administration of N2O[;]

[B]. [Defendant] does not personally explain the process to the parents or the patients, including possible effects and complications, nor does she take preoperative vital signs, or explain to [ ] patient what to expect, both in the normal circumstances, or if some adverse effect is occurring. One needs to ask questions during the procedure to assess this.

[C]. [Defendant] does not (and cannot) correctly titrate each patient, and this therefore, constitutes [an] improper and unprofessional practice in the administration of N2O inhalation sedation to her patients.[4]

6. At this time, the Court is addressing only the portion of the Defendant's case concerning Health Care Fraud, a felony, in violation of 11 *Del. C.* § 913A[5] and the Defendant's motion in limine in regard to Giordano's proposed testimony.

7. As a preliminary matter, the State argues that the Court should dismiss the Defendant's motion in limine because it was untimely. The deadline for filing motions of limine was May 11, 2018.[6] Despite the fact that the Defendant had nearly

---

[4] *Id.* at 4 ¶ 13.

[5] Indictment, *State v. Grace Liu*, Nos. 1709017188 and 1711012278.

[6] Pretrial Scheduling Order at ¶ 6.

3

four months to complete her motion, she untimely filed on July 19, 2018.[7] The Court granted the State time to respond, setting the response deadline for August 13, 2018, and then granted an enlargement until August 20, 2018. Despite that enlargement, the State's response was filed untimely on August 22, 2018.[8]

8. The Court has broad discretion to enforce its rules of procedures and pretrial orders.[9] Because the Defendant's motion was untimely, the Court is within its authority to deny the motion on those grounds alone. However, if the Court did that, it would sanction the Defendant for untimeliness while condoning the same by the State. Here, in the interests of justice, and in light of the fact that both parties were untimely, the Court will hear the Defendant's motion on the merits.

9. The proponent of the expert testimony bears the burden of establishing by a preponderance of the evidence the relevance, reliability, and admissibility of the expert testimony.[10] Here, Giordano is the State's witness. Thus, the State carries that burden.

10. Expert opinion evidence under Delaware law is governed by Delaware Rule

---

[7] At the hearing, the Defendant claimed that she did not think the May 11, 2018 deadline was the deadline and concedes that she should have verified with the State.

[8] At the hearing, the State contended that it filed its response on August 20, 2018. However, the response was marked by the Prothonotary on August 22, 2018. The Court has found no alternative explanation for this, other than it was received by the Court on August 22.

[9] *Miller v. State*, 2010 WL 3328004, at *2 (Del. Super. 2010).

[10] *Pavey v. Kalish*, 2010 WL 3294304, at *3 (Del. 2010) (citing *Sturgis v. Bayside Health Ass'n*, 942 A.2d 579, 584 (Del. 2007) quoting *Bowen v. E.I. Dupont Nemours & Co., Inc.*, 906 A.2d 787, 795 (Del. 2006)).

of Evidence 702 (D.R.E. 702). D.R.E. 702 provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if
> > 1) the testimony is based upon sufficient facts or data;
> > 2) the testimony is the product of reliable principles and methods; and
> > 3) the witness has applied the principles and methods reliably to the facts of the case.

11. To determine the admissibility of an expert opinion under *Daubert*[11] and D.R.E. 702, the Court must consider a list of non-exhaustive factors including:

1) witness' qualifications as an expert based on knowledge, skill, experience, training or education;[12]

2) the evidence's relevance;[13]

3) the opinion is based upon information reasonably relied upon by experts in the particular field;[14]

4) the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue;[15] and

---

[11] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[12] *Nelson v. State*, 628 A.2d 69, 74 (Del. 1993); D.R.E. 702.

[13] *Id.*; D.R.E. 401 and 402.

[14] *Id.*; D.R.E. 703.

[15] *Id.*; D.R.E. 702.

5) the testimony will not create unfair prejudice or confuse a jury.[16]

12. Turning to the merits, although both parties acknowledge Giordano as an expert and qualified dentist, the Defendant contends that Giordano's opinion is not relevant, nor would the testimony assist the trier of fact. The Defendant further asserts that in the event the Court finds Giordano's testimony relevant, the testimony creates unfair prejudice and confuses the jury because Giordano's testimony, and the report his testimony is based on, centers around uncharged Child Endangerment charges.[17] The State counters that Giordano "can opine that, from a reasonable degree of medical certainty, per state regulations, [the Defendant] could not allow her [unauthorized] dental assistants to administer N2O to patients" thus establishing relevancy. Additionally, the State asserts the report serves to refute any defense regarding the theory that the Defendant, not her assistants, administered the N2O.[18]

13. Only relevant evidence is admissible at trial, or in other words, evidence is only admissible when it demonstrates "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[19] The Court, in evaluating

---

[16] *Nelson*, 628 A.2d at 74; D.R.E. 403

[17] D. Mot. at 5.

[18] *Id.* The State, at oral argument, did not directly raise this point.

[19] D.R.E. 401.

6

relevance, considers both materiality and probative value.[20] Materiality refers to the relationship between the propositions for which the evidence is offered and the issues in the case, while probative value refers to the tendency of the evidence to establish the proposition that it is offered to prove.[21]

14. In his report, Giordano states, in laymen's terms, an explanation of the N2O administration process. The State asserts that the N2O administration testimony is relevant and helpful to the jury. Specifically, the State argues that the precise N2O administration process must be understood since it can show that the Defendant did not administer the N2O to patients, but yet billed DMAP as if she had. I disagree. As it pertains to the alleged 11 *Del. C.* § 913A violation, the Court finds Giordano's proposed testimony is relevant in part and irrelevant in part.

15. Section 913A provides a person is guilty of health-care fraud when the person knowingly:

> 1) Presents or causes to be presented any fraudulent health-care claim to any health-care benefit program; or
> 2) Engages in a pattern of presenting or causing to be presented fraudulent health-care claims to any health-care benefit program.[22]

16. Here, the Defendant's alleged violation of section 913A is not based on any aspect of the precise administration of N2O. Rather, the section 913A charges are

---

[20] *State v. Roberts*, 2018 WL 2085196, at *6 (Del. Super. May 2, 2018) (citing *Galloway v. State*, 65 A.3d 564, 569–70 (Del. 2013)).

[21] *Roberts*, 2018 WL 2085196, at *6 citing *Galloway*, 65 A.3d at 569.

[22] 11 *Del. C.* § 913A(a)(1)-(2).

based on the allegation that the Defendant did not administer the N2O at all, and then knowingly billed DMAP as if she had personally performed the N2O administration. If the State had continued to pursue Child Endangerment charges against the Defendant, then the precise step-by-step procedure may have been both material and probative to the elements of those violations. However, since the State chose not to pursue those charges and, as a result any detailed testimony regarding N2O administration procedures is neither material nor probative to the Defendant's section 913A charges, it is thus irrelevant to the State's case in chief.

17. However, the State also asserts that Giordano's conclusions are based in part on "every comment by the various [dental] assistants"[23] and further "quantifie[s], to some extent" that the Defendant's assistants "many (most?) (sic) did turn on the N2O."[24] Giordano's testimony regarding any statement made by the Defendant's dental assistants to shed light on their actions, or lack of actions, regarding N2O, is relevant and ultimately, insightful to the trier of fact in their evaluation and determination of whether the Defendant knowingly violated section 913A. The Court finds that portion of Giordano's testimony is material and probative, as it goes to the very heart of the Defendant's alleged section 913A violation. Thus, this portion of Giordano's testimony is relevant and admissible only in regard to whether the Defendant knowingly presented or caused to be presented, fraudulent health-care

---

[23] The State, at oral argument, stated Giordano had not interviewed any of dental assistants. His review was limited to medical documentation, police reports, and other notes.

[24] D. Mot. Ex. B at 4, ¶ 13.

claims to DMAP and that this alleged conduct constituted a pattern of presenting or causing to be presented, fraudulent health care claims.

18. Since the Court finds a portion of Giordano's testimony relevant, it now turns to the second issue raised by the Defendant, whether the testimony is unfairly prejudicial.[25] Here, Dr. Giordano's testimony would not create unfair prejudice.

19. Even marginally relevant evidence may be admissible at trial, provided its probative value is not outweighed substantially by the danger of unfair prejudice, confusions of the issues, or misleading the jury.[26] D.R.E. 403 permits the Court to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."[27] "The determination of whether the probative value of a particular piece of evidence is substantially outweighed by the danger of unfair prejudice is a matter which falls particularly within the discretion of the trial judge, who has the first-hand opportunity to evaluate relevant factors."[28]

20. In this case, danger of unfair prejudice - that is, the danger that the jury will consider the portions of Giordano's testimony already deemed irrelevant - is not substantially outweighed by the relevant portion's value in establishing the State's

---

[25] The State did not respond to the Defendant's D.R.E. 403 argument in its response.

[26] *Roberts*, 2018 WL 2085196, at *6 (citing D.R.E. 403).

[27] D.R.E. 403.

[28] *Gallaway*, 65 A.3d at 571 (quoting *Williams v. State*, 494 A.2d 1237, 1241 (Del. 1985).

case against the Defendant. In other words, by limiting the scope of the testimony, the Court mitigates any potential prejudice on behalf of the Defendant and thus makes it unlikely that a jury would factor the multiple uncharged counts of Child Endangerment, into its deliberations, the basis of the Defendant's D.R.E. 403 argument.

21. The Court finds that only those portions of Giordano's testimony regarding whether the Defendant knowingly presented, or caused to be presented, fraudulent health-care claims to DMAP constituting a pattern of presenting, or causing to be presented, fraudulent health care claims in violation of 11 Del. C. § 913A is relevant and admissible. The Court further finds that limiting the scope of Giordano's testimony to those relevant portions mitigates any potential prejudice.

22. For the above stated reasons, the Defendant's Motion in Limine is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:  Prothonotary
cc:  Laura N. Najemy, Esquire
     Eugene J. Maurer, Jr., Esquire
     Elise K. Wolpert, Esquire